UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BUNZL RETAIL SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 3761 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| MID ATLANTIC MEDICAL SERVICES, LLC, | ) | |
| PETER KRIEGER, and ALEXANDER P. GRIKITIS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Bunzl Retail Services, LLC, brings this diversity suit against Mid Atlantic Medical Services, LLC, its managing director, Peter Krieger, and its president, Alexander P. Grikitis, alleging breach of contract (against Mid Atlantic only), fraud, breach of fiduciary duty, unjust enrichment, and money had and received. Doc. 22. Krieger moves under Civil Rule 12(b)(2) to dismiss the claims against him for lack of personal jurisdiction. Doc. 25. Mid Atlantic and Grikitis move under Civil Rule 12(b)(6) to dismiss the non-contract claims against them for failure to state a claim. Doc. 26. Krieger's motion is denied, and Mid Atlantic and Grikitis's motion is granted, though Bunzl will be given an opportunity to replead its non-contract claims against those two defendants.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set

1

forth in Bunzl's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Bunzl as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018). (The principles governing the factual predicate for Krieger's Rule 12(b)(2) motion, which differ slightly from those governing the factual predicate for a Rule 12(b)(6) motion, are set forth below.)

Bunzl sources safety gloves for retailers. Doc. 22 at ¶¶ 5, 18-19. The Covid-19 pandemic made safety gloves difficult to locate. *Id.* at ¶¶ 18-19, 23. In its search for a glove broker, Bunzl encountered Krieger and Grikitis, who had recently formed Mid Atlantic. *Id.* at ¶¶ 8, 20-21, 25. Krieger, who identified himself as Mid Atlantic's managing director, *id.* at ¶ 26, falsely represented "that he and Grikitis had extensive knowledge, experience, and expertise in sourcing goods from Asia," *id.* at ¶ 28; that they "were actively sourcing, and had ongoing access to, extremely large quantities of safety gloves from Vietnam," *id.* at ¶ 29; that they "could obtain safety gloves demanded in large quantities by Bunzl's clients within the urgent timeframe requested," *id.* at ¶ 30; and that they could do so without involving a certain broker whose business practices Bunzl disapproved, *id.* at ¶¶ 32-34.

Relying on Krieger's misrepresentations, Bunzl signed a supply contract with Mid Atlantic. *Id.* at ¶¶ 31, 35, 84; *see* Doc. 1-1 (the contract). Ken LaPlante, Bunzl's director of sourcing, negotiated and signed the contract for Bunzl. Doc. 33-1 at ¶¶ 3, 7-9; Doc. 1-1 at 8. LaPlante resided in Illinois and, like Bunzl's senior leadership, worked primarily from Bunzl's Illinois headquarters. Doc. 33-1 at ¶¶ 3, 5, 10.

Pursuant to the contract, Bunzl issued some $2.7 million in purchase orders to Mid Atlantic. Doc. 22 at ¶¶ 40-41. Relying on a further misrepresentation that the glove factory required immediate, up-front payment, Bunzl released the payments in full to Mid Atlantic. *Id*. at ¶¶ 45-57. Mid Atlantic never delivered the gloves or refunded Bunzl. *Id*. at ¶¶ 64-65, 68, 73-75. Grikitis offered false or misleading excuses for failing to return Bunzl's payments. *Id*. at ¶¶ 79-84, 87-106, 117.

## Discussion

**I.   Personal Jurisdiction Over Krieger**

"The plaintiff bears the burden of establishing personal jurisdiction." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). "Where, as here, the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (internal quotation marks omitted). "When affidavits regarding the issue of personal jurisdiction are submitted, the district court may weigh the affidavits." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020).

"District courts exercising diversity jurisdiction apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). "The Illinois long-arm statute permits the court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing 735 ILCS 5/2-209(c)). Accordingly, the court must determine "whether the exercise of personal jurisdiction [over Krieger] would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

3

"Under the Fourteenth Amendment's Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has 'minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Philos*, 802 F.3d at 912-13 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alteration in original) (internal quotation marks omitted); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist.*, 141 S. Ct. 1017, 1024 (2021) ("[A] tribunal's authority depends on the defendant's having such contacts with the forum State that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.") (internal quotation marks omitted). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there. This purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on 'random, fortuitous, or attenuated contacts,' but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain*, 743 F.3d at 492-93 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (internal quotation marks omitted) (internal citation omitted); *see also Ford*, 141 S. Ct. at 1025 ("The contacts must be the defendant's own choice and not random, isolated, or fortuitous.") (internal quotation marks omitted).

"While there are two branches of personal jurisdiction theory—general and specific," *Philos*, 802 F.3d at 913, Bunzl focuses solely on specific jurisdiction. Both sides agree that *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012), articulates the standard governing specific jurisdiction where, as here, the plaintiff alleges fraud and other intentional torts. Doc. 33 at 7-8; Doc. 37 at 1-5. *Felland* holds that such a plaintiff must show "(1) intentional conduct (or

4

intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674-75 (internal quotation marks omitted); *see also Curry*, 949 F.3d at 399 (noting that an argument against exercising specific jurisdiction "rang particularly hollow" where the defendant "knowingly did do business with Illinois residents") (internal quotation marks and alteration omitted); *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 879 (7th Cir. 2019) (Barrett, J.) (holding that "purposeful contact" could include soliciting the plaintiff's business, negotiating a contract with a plaintiff's headquarters, and communicating with a plaintiff's headquarters by mail and phone). Krieger disputes whether Bunzl has demonstrated an injury in Illinois and, even if it had, whether he *knew* that Bunzl would be injured there. Doc. 37 at 3.

First, Krieger submits that if Bunzl experienced economic injury, it did so at its "corporate headquarters," not where the parties' contract was signed. *Id*. at 4. He cites no legal authority directly supporting this doubtful proposition. *Cf*. Restatement (Second) of Conflict of Laws § 148 cmt. c (Am. L. Inst. 1971) ("[T]he place of loss [arising from fraud] may be considered to be either the place where the plaintiff entered into the contract or the place where [it] relinquished the assets pursuant to the terms of the contract … ."). And even if Krieger were right, Illinois is not only where the contract was negotiated and signed, Doc. 1-1 at 8; Doc. 33-1 at ¶¶ 3, 9-10, but also the location of Bunzl's corporate headquarters, Doc. 33-1 at ¶¶ 3, 5. That Bunzl's corporate parent—a separate legal entity—has headquarters in Missouri, Doc. 22 at ¶ 6, is irrelevant. *See Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012) (explaining the "general rule" that, when evaluating personal jurisdiction, corporate parents and subsidiaries are treated as separate entities). Thus, Bunzl's alleged injury occurred in Illinois.

5

Second, as to Krieger's knowledge, the record establishes for present purposes that he knew Bunzl would feel the effects of his conduct in Illinois. Correspondence or other documents apprising a defendant of the plaintiff's location in the forum State can demonstrate the requisite knowledge. *See Felland*, 682 F.3d at 675 (holding that the defendant "knew the alleged harm would be felt in Wisconsin," in part because the plaintiffs' "Wisconsin residency was noted in various documents possessed and signed by [the defendant]"); *Fletcher v. Doig*, 125 F. Supp. 3d 697, 708-09 (N.D. Ill. 2014) (holding that the defendant "knowingly directed his conduct to Illinois" where he received and reviewed emails and letters noting the plaintiff's Chicago address). Here, LaPlante emailed Krieger "exclusively from [his] Bunzl e-mail account, and most if not all" of those emails "included a signature block" with "the address of Bunzl's Illinois headquarters." Doc. 33-1 at ¶ 11. And Krieger knowingly directed contract negotiations—through emails, text messages, and phone calls with LaPlante—toward Illinois. *Id*. at ¶¶ 9, 12. Those undisputed facts suffice to show that Krieger knew the effects of his alleged misrepresentations would be felt in Illinois. *See John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018) (noting that *Felland* "found sufficient contacts based on communications sent to the plaintiffs in the forum state" where "[t]he defendants purposefully directed the communications to the jurisdiction, and the communications were the basis of the plaintiffs' claim of intentional misrepresentation").

Krieger presents no other arguments against the exercise of personal jurisdiction, thereby forfeiting any other grounds for dismissal. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of

a motion to dismiss or an argument establishing that dismissal is inappropriate."). His Rule 12(b)(2) motion is therefore denied.

## II. Claims Against Mid Atlantic and Grikitis

Illinois law governs Bunzl's claims against Mid Atlantic and Grikitis because no party raises a conflict of law issue. *See Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.") (internal quotation marks omitted).

### A. Conspiracy and Aiding and Abetting Fraud Claims

The operative complaint does not allege that Mid Atlantic or Grikitis themselves directly committed fraud. Doc. 22 at ¶¶ 114-124. Instead, Bunzl alleges that Krieger committed fraud, *ibid.*, and claims that Mid Atlantic and Grikitis conspired with Krieger and aided and abetted his fraud, *id.* at ¶¶ 125-135.

In seeking dismissal of those claims, Mid Atlantic and Grikitis argue that the complaint fails to state a fraud claim against Krieger, thereby eliminating the predicate for derivative liability against them. Doc. 26 at 6-9. They construe the complaint as alleging promissory fraud against Krieger—that is, that Krieger misrepresented his intent to perform a promise—instead of fraudulent inducement. *Ibid.*; Doc. 38 at 3-4; *see Ass'n Ben. Servs. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007) ("[P]romissory fraud, involving a false statement of intent regarding future conduct, is generally not actionable under Illinois law unless the plaintiff also proves that the act was part of a scheme to defraud."). But the complaint alleges that Bunzl relied on Krieger's misrepresentations about Defendants' "experience, expertise, [and] ongoing sourcing operations," Doc. 22 at ¶ 31, which Mid Atlantic and Grikitis concede are "present conditions" or "then-present facts" that can support a fraudulent inducement claim, Doc. 38 at 4.

7

So, the complaint alleges fraudulent inducement against Krieger, not promissory fraud. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 413 (7th Cir. 2009) (contrasting promissory fraud, which arises from "a false statement of intent regarding future conduct," with fraudulent inducement, which arises from a false statement of "present or past facts"); *cf. NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 309 (7th Cir. 2018) (New York law) (holding that a defendant's misrepresentations about "its own experience" and "the status of its components" concerned "presently-existing facts," thereby supporting a fraudulent inducement claim).

In a related vein, Mid Atlantic and Grikitis submit that the omission of the words "void," "voidable," and "fraudulent inducement" from the complaint indicates that Bunzl intends to plead promissory fraud, not fraudulent inducement. Doc. 38 at 8-9. That point is unpersuasive. As an initial matter, "there is no rule requiring parties to plead legal theories." *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019). In any event, a plaintiff's seeking to affirm rather than avoid a contract is entirely consistent with its pursuing a fraudulent inducement claim. *See Kel-Keef Enters. v. Quality Components Corp.*, 738 N.E.2d 524, 531-34 (Ill. App. 2000) (holding that a fraud plaintiff could seek, in the alternative, either damages for breach of the parties' contract or repudiation of the contract); *Estes v. Smith*, 614 N.E.2d 469, 473 (Ill. App. 1993) ("A party alleging fraud in a contract action has an election of remedies: he may seek rescission of the contract or he may seek money damages for breach of contract or he may seek money damages on a tort claim."). And fraudulent inducement is merely "a form of common-law," or generic, fraud. *Merrilees v. Merrilees*, 998 N.E.2d 147, 158 (Ill. App. 2013). Consequently, a complaint need not use the words "void," "voidable," or "inducement" to plead fraudulent inducement.

Mid Atlantic and Grikitis next contend that because Bunzl relied on Krieger's alleged misrepresentations only in combination with Mid Atlantic's contractual promises, the misrepresentations are not actionable as fraud. Doc. 38 at 4, 7-8. This contention is hard to understand. Mid Atlantic and Grikitis cite no authority suggesting that a plaintiff's reliance on multiple representations or promises, some set forth in the contract and others not, defeats a fraudulent inducement claim. In fact, such claims can arise even where several factors, some lawful and others not, jointly induced the plaintiff to contract. *See Jordan v. Knafel*, 880 N.E.2d 1061, 1069 (Ill. App. 2007) ("To be material, the representation need not have been the paramount or decisive inducement, so long as it was a substantial factor.") (internal quotation marks omitted). Moreover, the court must draw all reasonable inferences in Bunzl's favor on a Rule 12(b)(6) motion. The complaint's allegations support a fair inference that Bunzl relied on each alleged misrepresentation, including the ones—those concerning Defendants' knowledge, expertise, experience, and ongoing sourcing operations—that Mid Atlantic and Grikitis concede can support a fraudulent inducement claim. Doc. 22 at ¶¶ 31, 116, 118, 122. At this juncture, that suffices to state a claim, even under Rule 9(b)'s heightened pleading requirements.

Mid Atlantic and Grikitis argue in their reply brief that Bunzl's reliance on Krieger's alleged misrepresentations was unreasonable because they "were made at the height of the COVID-19 pandemic while (as Bunzl well knew) procurement of gloves and other PPE was unstable and changed regularly." Doc. 38 at 4. That argument is forfeited because it was raised for the first time in a reply brief. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived."); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he

9

district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). The argument also fails on the merits.

Reasonable reliance is ordinarily a question of fact, and "where the representation is made as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation." *Pack v. Maslikiewicz*, 144 N.E.3d 37, 65 (Ill. App. 2019); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) ("Under Illinois law, justifiable reliance exists when it was reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation.") (internal quotation marks omitted). Defendants' knowledge, experience, expertise, and ongoing sourcing operations were presumptively within Krieger's knowledge, and Bunzl was entitled to rely on Krieger's representations, at least absent additional facts not alleged in the complaint. So, the court cannot say at this juncture that Bunzl's reliance was unreasonable as a matter of law.

The intracorporate conspiracy doctrine, however, requires dismissal of the conspiracy and aiding and abetting fraud claims. (Bunzl does not argue that the doctrine applies only to conspiracy claims, Doc. 34 at 10-11, so the court applies it to the aiding and abetting claim as well. *See Cowing v. Commare*, 499 S.W.3d 291, 294-95 (Ky. App. 2016) (Kentucky law) (holding that the doctrine applies to aiding and abetting claims); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 78 (1996) (California law) (same).) "[B]ecause the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (Ill. 1998). It necessarily follows that a company cannot conspire with its officers or employees who are acting on the company's behalf. *See ABC Acquisition Co. v. AIP Prods. Corp.*, 2020 WL 4607247, at *20

(N.D. Ill. Aug. 11, 2020) (citing *Small v. Sussman*, 713 N.E.2d 1216, 1222 (Ill. App. 1999), and *Van Winkle v. Owens-Corning Fiberglas Corp.*, 683 N.E.2d 985, 991 (Ill. App. 1997)).

The complaint alleges that Krieger and Grikitis committed their misconduct while acting in their capacity as agents or officers of Mid Atlantic. Doc. 22 at ¶ 9 ("Defendant Grikitis … was at all relevant times hereto, President of Defendant Mid Atlantic."); *id*. at ¶ 12 ("Defendant Krieger … was at relevant times hereto an employee and agent of, including but not limited to Managing Director of, Defendant Mid Atlantic."); *id*. at ¶ 26 (alleging that "Krieger identified himself to Bunzl representatives … as Managing Director of Mid Atlantic"); *id*. at ¶ 35 (alleging that Grikitis signed the contract on Mid Atlantic's behalf). Given those allegations, the intracorporate conspiracy doctrine forecloses the conspiracy and aiding and abetting claims against Mid Atlantic and Grikitis.

As Bunzl notes, Doc. 34 at 10-11, an exception to the doctrine applies "where the interests of a separately incorporated agent diverge from the interests of the corporate principal and the agent at the time of the conspiracy is acting beyond the scope of his authority or for his own benefit, rather than that of the principal." *Bilut v. Nw. Univ.*, 692 N.E.2d 1327, 1332 (Ill. App. 1998). That exception does not apply here given Bunzl's allegation that Grikitis, Krieger, and Mid Atlantic all shared a "mutual objective of deriving a material benefit" from the alleged fraud. Doc. 22 at ¶ 126. Still, because Bunzl may be able to clarify or augment its allegations to fit under the exception, or perhaps to state a claim under a different theory of derivative liability, the conspiracy and aiding and abetting claims are dismissed without prejudice and with leave to amend.

### B. Breach of Fiduciary Duty

Bunzl does not plead facts that would support imposing on Mid Atlantic and Grikitis a fiduciary duty arising from Bunzl's contract with Mid Atlantic. "It is a fundamental principle of

agency law that agents owe fiduciary duties of loyalty to their principals … ." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003). The complaint's allegations do not give rise to a fair inference of an agency relationship between Bunzl and either Mid Atlantic or Grikitis. "While an agency relationship can be created by contract, not all contractual relationships form an agency." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020). Rather, "the test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021) (alteration omitted).

Nothing in the complaint or the parties' contract indicates that Bunzl could control the method and manner of Mid Atlantic's operations, or that Mid Atlantic or Grikitis could affect Bunzl's legal relationships. Instead, it appears that Bunzl merely set some contractual parameters, Doc. 1-1, including the requirement that Defendants refrain from using a particular broker, Doc. 22 at ¶¶ 32-33. And, importantly, there is no indication that Mid Atlantic and Grikitis agreed to act primarily for Bunzl's benefit rather than their own. *See Fed. Pants, Inc. v. Stocking*, 762 F.2d 561, 564 (7th Cir. 1985) (distinguishing "an agent from a supplier: 'one who contracts to acquire property from a third person and convey it to another is the agent of the other only if it is agreed that he is to act primarily for the benefit of the other and not for himself'") (quoting Restatement (Second) of Agency § 14K (Am. L. Inst. 1958)). It follows that the complaint and contract "establish[] nothing more than a business relationship between the parties—not agency." *Sosa*, 8 F.4th at 641.

Even without an agency relationship, "[a] fiduciary duty may be created where one party places trust and confidence in another, thereby placing the latter party in a position of influence

and superiority over the former." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (internal quotation marks omitted). The complaint's allegations negate the existence of such a relationship. "The factors to be considered in determining the existence of a fiduciary or confidential relationship are the degree of kinship of the parties, the disparity in age, health, mental condition, education and business experience between them, and the degree of trust placed in the dominant party." *Amendola v. Bayer*, 907 F.2d 760, 763-64 (7th Cir. 1990). None of those factors are present here: Mid Atlantic was a newly formed entity whose principals lacked expertise or experience in sourcing operations, Doc. 22 at ¶¶ 8, 20, 31, and Bunzl—an established market participant, *id*. at ¶¶ 5, 19—"first came into contact with" Mid Atlantic the same month they signed the contract, *id*. at ¶¶ 25, 35. Although the pandemic made sourcing safety gloves difficult, *id*. at ¶¶ 18-20, 23-24, that fact is irrelevant because the two companies transacted at arm's length. *See KFC Corp. v. Iron Horse of Metairie Rd., LLC*, 2020 WL 3892989, at *10 (N.D. Ill. July 10, 2020) ("Arms-length business transactions … do not ordinarily give rise to fiduciary duties—even where one party has a slightly dominant business position.") (internal quotation marks omitted). Accordingly, the fiduciary duty claim against Mid Atlantic and Grikitis is dismissed.

### C. Unjust Enrichment and Money Had and Received Claims

Finally, Bunzl attempts to state equitable claims for unjust enrichment and money had and received. Doc. 22 at ¶¶ 141-151. Bunzl intends to plead those claims as alternatives to its breach of contract claim. Doc. 34 at 14-15; *see* Fed. R. Civ. P. 8(d)(2)-(3). But the complaint incorporates its express contract allegations into the unjust enrichment and money had and received counts, *id*. at ¶¶ 141, 148, which is not proper pleading in the alternative. *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (holding that a plaintiff "may not include

13

allegations of an express contract which governs the relationship of the parties[] in the counts for unjust enrichment and promissory estoppel").

The equitable claims against Mid Atlantic and Grikitis therefore are dismissed with leave to amend, as Bunzl requests. Doc. 34 at 15 n.3. If Bunzl repleads those claims, it "need not use particular words to plead in the alternative," but it "must use a formulation from which it can be reasonably inferred" that its equitable claims are stated in the alternative to its contract claim. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).

## Conclusion

Krieger's motion to dismiss is denied. Mid Atlantic and Grikitis's motion to dismiss is granted, and the non-contract claims against them are dismissed without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). Bunzl has until February 22, 2022, to file a second amended complaint. If Bunzl does not do so, the dismissal of the non-contract claims against Mid Atlantic and Grikitis will convert automatically to a with-prejudice dismissal, and Defendants shall answer the surviving portions of the operative complaint by March 1, 2022. If Bunzl files a second amended complaint, Defendants shall file a responsive pleading by March 15, 2022.

February 1, 2022

_____
United States District Judge

14