UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BUNZL RETAIL SERVICES, LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-03761 |
| ) | |
| MID ATLANTIC MEDICAL SERVICES ) | |
| LLC N/K/A MID ATLANTIC ) | |
| PARTNERS LLC, PETER KRIEGER, ) | |
| and ALEXANDER P. GRIKITIS, ) | |
| ) | |
| *Defendants*. ) | |

**MOTION FOR ENTRY OF JUDGMENT**

Plaintiff Bunzl Retail Services, LCC ("Bunzl"), by and through counsel, hereby submits this Motion for Entry of Judgment pursuant to Fed. R. Civ. P. 55(b) and requests that the Court direct the clerk to enter a sum-certain judgment against Defendants Mid Atlantic Medical Services LLC N/K/A Mid Atlantic Partners LLC ("MAMS"), Peter Krieger ("Krieger"), and Alexander Grikitis ("Grikitis") (collectively "Defendants") on Count II of Bunzl's Second Amended Complaint.

Bunzl seeks judgment against Defendants because Defendants defrauded Bunzl out of $2,737,800, obscured what had happened, and have each refused to respond to Bunzl's Second Amended Complaint and ceased participating in this lawsuit. For the reasons set forth in Bunzl's Motion for Entry of Default, Doc. 72, the Court directed the clerk to enter the default of Defendants under Fed. R. Civ. P. 55(a), Doc. 73. Now, pursuant to Rule 55(b), Bunzl is entitled to judgment against all Defendants, jointly and severally as to Krieger and Grikitis and vicariously as to Mid Atlantic, in the amount $2,737,800 in damages, prejudgment interest calculated at 5% per annum, and Bunzl's costs.

1

I. **Legal Standard**

Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend … the clerk must enter the party's default." Fed. R. Civ. P. 55(a). That has already happened in this case. Doc. 73. Next, under Rule 55(b)(1), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing … ." Fed. R. Civ. P. 55(b)(1). That judgment is what Bunzl now requests. Bunzl believes that this judgment may be entered pursuant to Rule 55(b)(1), in which case no hearing is required by the Rules, but understands that the Court has set a September 6, 2022 hearing date for this Motion for Judgment. Should the Court continue to find a hearing necessary or helpful, Bunzl will of course appear as directed.

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012); *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). "[T]here is nothing left for the district court to do except enter judgment." *Chathas v. Loc. 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 512 (7th Cir. 2000).

It is black-letter law that where a plaintiff has pled multiple theories, the plaintiff may elect on which theory to proceed. *Farm Credit Leasing Servs. Corp. v. Nalley*, No. 19-CV-424-DWD, 2021 WL 6280383, at *1 (S.D. Ill. Mar. 11, 2021). For example, a party that has alleged both fraud and breach of contract in the same action, as Bunzl has here, may elect to seek money damages on the fraud claim alone. *See Estes v. Smith*, 244 Ill. App. 3d 681, 614 N.E.2d 469, 473 (Ill. App. 1993); *see Kel-Keef Enters., Inc. v. Quality Components Corp.*, 316 Ill. App. 3d 998,

738 N.E.2d 524, 531-34 (Ill. App. 2000). Bunzl now requests entry of judgment on Count II for fraud by all Defendants.

**II.     Facts**

Bunzl sources safety gloves for its customers, who are largely retailers. Second Amended Complaint, Apr. 29, 2022, Doc. 56 ("SAC"), ¶ 5; Mem. Op. and Order, Feb. 2, 2022, Doc. 44 ("Order") at 2-3. The Covid-19 pandemic made safety gloves difficult to locate. SAC ¶¶ 23, 24; Order at 2-3. In its search for a glove broker, Bunzl encountered Defendants Krieger and Grikitis, who had recently formed a company, Defendant Mid Atlantic. SAC ¶¶ 20, 25; Order at 2-3. Krieger represented himself to be the Managing Director of Mid Atlantic, and Grikitis was Mid Atlantic's President. SAC ¶¶ 9, 26; Order at 2-3. During these initial encounters, Krieger falsely represented that "he and Grikitis had extensive knowledge, experience, and expertise in sourcing goods from Asia" and were "actively sourcing, and had ongoing access to, extremely large quantities of safety gloves from Vietnam." SAC ¶¶ 28, 29; Order at 2-3. Relying on these misrepresentations, Bunzl signed a supply agreement with Mid Atlantic, with Bunzl's Director of Sourcing negotiating and signing on Bunzl's behalf. SAC ¶ 35; Declaration of Ken LaPlante ("LaPlante Decl.") ¶ 4 (attached hereto as Attachment 1); Order at 2-3.

Pursuant to the supply agreement, Bunzl issued purchase orders to Mid Atlantic for safety gloves, for a total payment of **$2,737,800.00**. SAC ¶¶ 37, 41; LaPlante Decl. ¶¶ 5, 6 & Ex. A. Mid Atlantic issued invoices for each purchase order, also totaling $2,737,800. SAC ¶ 42; LaPlante Decl. ¶ 7 & Ex. B. In compliance with the supply agreement, on August 20, 2020, Bunzl paid $2,737,800 into an escrow account designated under the supply agreement. SAC ¶ 47; LaPlante Decl. ¶ 8 & Ex. C. On August 21 and 25, 2020, Bunzl authorized the release of the entire $2,737,800 from the escrow account to Mid Atlantic. SAC ¶¶ 50, 53; LaPlante Decl. ¶¶ 9,

3

10 & Ex. C. In doing so, Bunzl relied upon Krieger's false representations that the glove factory possessed the ordered safety gloves and had allocated them to Bunzl, but would not permit their release from the factory for confirmatory inspection until the factory received immediate, up front payment. SAC ¶¶ 53, 54; LaPlante Decl. ¶¶ 9, 10; Order at 2-3. These misrepresentations regarding the existence and allocation of the gloves, as well as the requirement for immediate, up front payment, were made to Bunzl by Krieger and directed by Grikitis, both of them knowing these representations to be false and intending that Bunzl rely on them to authorize payment to Mid Atlantic. SAC ¶¶ 55-57. Both Krieger and Grikitis were acting in service of, and within the scope of their employment by, Mid Atlantic in making these representations. *Id.* ¶ 120.

No Defendant ever delivered the gloves to Bunzl or refunded any portion of the $2,737,800 to Bunzl, and Bunzl never received the gloves or a refund from any other source. SAC ¶¶ 74, 101, 107; LaPlante Decl. ¶¶ 11, 12; Order at 2-3. Both Grikitis and Krieger offered false or misleading excuses for failing to return the payment. SAC ¶¶ 83-101; Order at 2-3. Ultimately, Bunzl has been damaged by Defendants' fraud in the amount of its payment: $2,737,800. SAC ¶¶ 118-121; LaPlante Decl. ¶ 12.

### III. Analysis

The well-pleaded factual allegations in Bunzl's Second Amended Complaint, which are taken as true now and deemed admitted, establish that Krieger, Grikitis, and Mid Atlantic are all liable to Bunzl for fraud under Illinois law. *See Hotel Emps. & Rest. Emps. Int'l Union Welfare Fund v. Billy's 1870*, No. 03 C 8337, 2004 WL 1879986, at *1 (N.D. Ill. Aug. 12, 2004) ("Upon entry of default, all factual allegations contained within the complaint are deemed admitted."). This liability is joint and several as against Krieger and Grikitis and vicarious as against Mid Atlantic. *See Best v. Taylor Machine Works*, 179 Ill. 2d 367, 423, 689 N.E.2d 1057 (Ill. 1997)

4

(joint and several liability occurs where "two or more defendants tortiously contribute to the same, indivisible injury"); *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1057, 946 N.E.2d 463 (Ill. App. 2011) (a principal is vicariously liable for the full injury caused by tortious actions of its agents).

Under Illinois law, a fraud claim requires proof of: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement." *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 892 (N.D. Ill. 2014). Corporate officers are liable for other officers' or employees' fraudulent actions in which they participate or assist, knowingly or recklessly, in the fraud. *Citizens Sav. & Loan Ass'n v. Fischer*, 67 Ill. App. 2d 315, 214 N.E.2d 612, 615-16 (Ill. App. 1966). Consequently, a corporate officer who directs another employee to commit a fraudulent act has himself committed fraud. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 502, 607 N.E.2d 165, 179–80 (Ill. 1992). Last, "[u]nder common-law principles of *respondeat superior*, a principal is liable for deceit of his agent, if committed in the very business the agent was appointed to carry out, even where the agent's specific conduct was carried out without knowledge of the principal." *Peddinghaus v. Peddinghaus*, 314 Ill. App. 3d 900, 904, 733 N.E.2d 797, 800 (Ill. 2000).

According to the facts in the Second Amended Complaint, all three Defendants are liable for common law fraud. Krieger, Mid Atlantic's Managing Director, made direct and knowing misrepresentations of fact to Bunzl on which Bunzl reasonably relied to make payment of more than $2.7 million, which money was never refunded and for which Bunzl received nothing in return. SAC ¶¶ 110-121; Order at 7-10. Grikitis, Mid Atlantic's President, participated in the

5

fraud by providing Krieger with information he knew to be false and knowingly directing Krieger to make misrepresentations to Bunzl to induce payment. SAC ¶ 114. Finally, Krieger and Grikitis, as employees of agents of Mid Atlantic, committed and participated in these misrepresentations in in the course and scope of their duties as employees of Mid Atlantic, and Mid Atlantic is thus liable for fraud under the principle of *respondeat superior*. SAC ¶ 120.

The well-pleaded facts of the Second Amended Complaint, taken as true as they must be under Rule 55(b), establish liability under Count II for all three Defendants. The only thing left is damages, which are a sum certain: $2,737,800, the amount Bunzl paid to Mid Atlantic in reliance upon Defendants' misrepresentations.

## IV. Damages

Bunzl's claim under Count II is for a sum certain. Bunzl paid a definitive amount—$2,737,800—in reasonable reliance on Defendants' fraudulent representations. LaPlante Decl. ¶¶ 9-11. That is the amount of Bunzl's damages under Count II, because Bunzl has never received a refund of any portion of that money, and has never received anything in return for the money it paid. *Id.* ¶¶ 11-12.

Bunzl is also entitled to prejudgment interest on Bunzl's damages. In Illinois, prejudgment interest is available for common law fraud claims where a plaintiff's damages are in an amount certain. *See, e.g.*, *LinkEpic Inc. v. Vyasil, LLC*, No. 12-CV-9058, 2020 WL 8455109, at *4 (N.D. Ill. Oct. 2, 2020); *Marcus & Millichap Real Estate Inv. Servs. Inc. v. Sekulovski*, No. 07 C 5369, 2010 WL 145785, at *5 (N.D. Ill. Jan. 12, 2010); *Zivitz v. Greenberg*, No. 98 C 5350, 2000 WL 204238, at *5 (N.D. Ill. Feb. 16, 2000); *Leister v. Dovetail, Inc.*, No. 05-2115, 2009 WL 3460628, at *5 (C.D. Ill. Oct. 22, 2009); Because "the purpose of prejudgment interest is to compensate plaintiffs for the lost time value of money," *Rowe v. Maremont Corp.*, 850 F.2d

6

1226, 1243 (7th Cir. 1988), "prejudgment interest typically accrues from the date of the loss or from the date on which the claim accrued." *Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1263 (N.D. Ill. 2015), *aff'd*, 842 F.3d 1010 (7th Cir. 2016). "Because the claims against [Defendants] were brought under Illinois law, the 5% prejudgment interest rate set forth in the Illinois Interest Act, 815 ILCS 205/2, [applies]." *LinkEpic*, 2020 WL 8455109, at *4 (awarding prejudgment interest on amount "actually expended in reliance on [defendant]'s fraudulent representations"). Bunzl is further entitled to its costs pursuant 28 U.S. Code § 1920.

## Conclusion

Bunzl respectfully requests that the clerk of this Court enter judgment for Bunzl and against Krieger and Grikitis jointly and severally, and Mid Atlantic vicariously, on Count II of Bunzl's Second Amended Complaint in the amount of $2,737,800, plus prejudgment interest at 5% per annum and Bunzl's costs. Bunzl has submitted a Proposed Judgment with this Motion that aligns with this request.

Dated: August 30, 2022

Respectfully submitted,

By: /s/ *A. James Spung*
Michael R. Annis, #6238967
Michael D. Hayes, #6187607
A. James Spung
Dustin L. Taylor, #6328158
HUSCH BLACKWELL LLP
190 Carondelet Plaza Suite 600
St. Louis, MO 63105
Phone: 314.480.1500
Fax 314.480.1505
mike.annis@huschblackwell.com
michael.hayes@huschblackwell.com
james.spung@huschblackwell.com
dustin.taylor@huschblackwell.com

*Attorneys for Plaintiff Bunzl Retail Services LLC*

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed with this Court on August 30, 2022 and served on all parties of record via the Court's e-filing system.

<u>/s/ A. James Spung</u>